# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANESHA ALLEN and SHAKERA ALLEN-WHITE,<br><br>Plaintiffs,<br><br>v.<br><br>BLOOMINGDALE'S, INC., MACY'S, INC., and JOHN DOES 1-100,<br><br>Defendants. | Civ. No. 2:16-00772<br><br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Shanesha Allen and Shakera Allen-White (collectively "Plaintiffs") bring this action against Defendants Bloomingdale's, Inc., Macy's, Inc. and John Does 1-100 (collectively "Defendants"), alleging violations of the New Jersey Law Against Discrimination ("NJLAD"), in connection with their termination of employment by Bloomingdale's. This matter comes before the Court on Defendants' motion to compel arbitration and dismiss the complaint pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to compel arbitration is **GRANTED** and Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' cross-motion to amend the complaint is **DENIED**.

## I.   BACKGROUND

Plaintiffs are African-American females, sisters and former employees of Bloomingdale's. Defs.' Notice of Removal ("Defs.' Notice"), Ex. A, Compl. ¶¶ 1–2, 7, ECF No. 1-1. Bloomingdale's is an Ohio retail corporation, with its principal place of business in New York. *See* Defs.' Notice at ¶ 5, ECF No. 1. Macy's is a Delaware retail corporation, with its principal place of business in Ohio. *See id.* at ¶ 4. Bloomingdale's is a wholly-owned subsidiary of Macy's. *See* Corporate Disclosure Statement, ECF No. 2.

1

### A.     Procedural History

On December 14, 2015, Plaintiffs filed a complaint (the "Complaint") against Defendants in the Essex County Law Division of the Superior Court of New Jersey, alleging violations of the NJLAD and claims of defamation and false light.  *See* Defs.' Notice at ¶ 1; Ex. A.  On February 12, 2016, Defendants removed the case to this Court, asserting complete diversity of citizenship and a claim in controversy exceeding $75,000.  *See id.* at ¶¶ 6–7.  Plaintiffs subsequently moved to remand the case to state court, but were denied.  *See* Order, Aug. 30, 2016, ECF No. 14.  Defendants now move to compel arbitration and dismiss the Complaint or, in the alternative, to stay proceedings pending the outcome of arbitration.  *See* Am. Mem. of Law in Supp. of Defs.' Mot. to Compel Arbitration ("Defs.' Mem.") 1, Oct. 24, 2016, ECF No. 18.[1]  Plaintiffs oppose and cross-move to amend the Complaint.  *See* Pls.' Mem. in Opp'n ("Pls.' Opp'n"), ECF No. 22.

### B.     Plaintiffs' Complaint

Plaintiffs allege that Defendants unlawfully discriminated and retaliated against them by subjecting them to a hostile work environment, by terminating their employment, and by the disparate treatment Allen was subjected to due to her race, color and gender.  *See* Defs.' Notice, Ex. A at ¶¶ 82, 85.  In brief, Allen alleges that she was terminated in connection with her repeated attempts for promotion because Bloomingdale's sought to maintain a management structure devoid of anyone of her race and color.  *See id.* at ¶ 47.  Likewise, Allen-White was terminated in retaliation for her support of her sister's attempts at promotion.  *See id.* at ¶ 48.  According to Plaintiffs, Defendants purported to have terminated them because they violated Bloomingdale's employee return policy; but Plaintiffs allege that the policy violation with which they were accused was not enforced against other Bloomingdale's employees outside of their protected class—*i.e.* white employees.  *See id.* at ¶¶ 34–48.  The violation was merely a pretext for the company's desire to keep its management ranks free from persons of color.  *See id.* ¶¶ 47–48.

### C.     Defendants' Motion

Defendants move to compel arbitration because Plaintiffs previously agreed to resolve all employment-related disputes through Solutions InSTORE (the "SIS Program"), Defendants' internal dispute resolution program.  *See* Defs.' Mem. at 1.  Defendants contend that the allegations in the Complaint "fall squarely within the scope of the agreement to arbitrate" and, therefore, the Court should dismiss the Complaint in its entirety.  *Id*.

---

[1] The Court notes that Defendants filed two motions to compel on October 21, 2016: one for each Plaintiff.  ECF Nos. 16, 17.  Defendants filed an amended motion concerning Plaintiff Allen-White on October 24, 2016, correcting a filing error in the original motion.  ECF No. 18.  Upon comparing Defendants' motions, the Court finds that there is very little substantive difference between them except for the names of the Plaintiffs.  The Court, therefore, will cite only to the amended motion when referencing Defendants' arguments unless otherwise noted.

The SIS Program seeks "to surface and resolve disputes early and fairly" through a four-step procedure. *See id*. at 2. The four steps to be undertaken by employees are: (1) informal resolution of grievances by supervisors or local management; if unsuccessful, (2) elevation of grievances to senior human resources executives for investigation; (3) review by the office of SIS or a peer review panel; and, if necessary, (4) arbitration. *See id*. at 2–3. Employees agree to participate in the process by virtue of their acceptance of, or continued employment with, Bloomingdale's, but the final arbitration step is optional. *See id*. at 3–4. Upon the date of their hiring, employees have thirty days to decide whether to participate in arbitration and may notify SIS of their opt-out by completing and mailing in a form to the office of SIS. *See* Decl. of Matthew Melody ("Melody Decl."), Ex. C, ECF No. 16-4. If employees do not expressly opt out by completing the form, then they are deemed to have agreed to arbitration. *See* Melody Decl. at ¶ 9, ECF No. 16-1. Employment is not conditioned upon employees' decisions regarding arbitration and those decisions are kept confidential. *See* Defs.' Mem. at 4.

All federal, state or local statutory and common law employment-related claims are subject to the arbitration agreement ("Agreement"), including state anti-discrimination statutes. *See* Melody Decl., Ex. A at 6–7, ECF No. 16-2. Bloomingdale's covers the cost of arbitration with the exception of a filing fee, which is one day's wages of the aggrieved employee or $125, whichever is less. *See* Defs.' Mem. at 5. The company also offers reimbursement of counsel's fees up to $2,500, should the aggrieved employee choose to hire counsel. *See id*. If the employee does not hire counsel, then the company will also participate without counsel. *See id*. at 6. The Agreement allows each party to conduct three depositions and issue twenty interrogatories, but the arbitrator may grant further discovery if needed. *See id*. Finally, the arbitrator possesses the authority to grant appropriate relief under applicable law. *See id*. at 7.

Defendants submit that Plaintiffs were informed of the SIS Program, including the arbitration component and the opt-out form, at the time of their hiring. *See id*. Plaintiffs were given several documents consisting of the Agreement, including the SIS Brochure, the Plan Document, the Election Form, and the New Hire Acknowledgement Form. *See id*. Both Plaintiffs signed the acknowledgement form and neither submitted the opt-out form. *See* Melody Decl. at ¶¶ 19, 25, 32; Melody Decl. at ¶¶ 19, 25, 32, ECF No. 17-1.

In light of the facts above, Defendants argue that the Agreement should be enforced because it is valid and enforceable under the law and because the interests of public policy favor arbitration. *See* Defs.' Mem. at 15–28. The Agreement is enforceable because it satisfies the three critical contractual elements: (1) a valid offer to arbitrate, which was effectively communicated to Plaintiffs, *see id*. at 19–20; (2) acceptance of the offer as evidenced by electronic signature of the acknowledgement form, thereby recognizing the information contained in the Agreement, *see id*. at 20–24; and (3) ample consideration, *see id*. at 24–26. Defendants further argue that there is no question that Plaintiffs' NJLAD claims fall within the scope of the agreement. *See id*. at 26–27.

3

### D. Plaintiffs' Opposition

Plaintiffs argue that the Agreement is unenforceable because it constitutes a private agreement that frustrates the public purpose of the NJLAD to eradicate "the cancer of discrimination," which New Jersey courts have found to be unconscionable. *See* Pls.' Opp'n at 1. Plaintiffs further argue that the agreement does not constitute a valid contract because the documents provided to Plaintiffs were confusing and deceiving, and cannot establish the formation of a contract. *See id.* Plaintiffs do not contest the facts that Plaintiffs received the documents concerning the SIS Program, signed the acknowledgement forms and did not complete the opt-out forms. *See id.* at 1–3. Plaintiffs also cross-move to amend the Complaint, seeking to add claims of aiding and abetting violations of the NJLAD by certain individuals. *See id.* at 11.

## II. LEGAL STANDARD

The parties agree that a summary judgment standard applies where the existence of an agreement to arbitrate is not apparent from the face of the complaint, as is the case here. *See* Defs.' Mem. at 15 n.4; Pls.' Opp'n at 3. Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

The Court will address each of Plaintiffs' arguments in turn, beginning with their contention that the informing documents are confusing, deceiving and cannot form the basis of a legal contract.

### A. Plaintiffs' Invalid Contract Argument

"When sitting in diversity, a federal court applies the choice of law principles of the forum state." *Harkes v. The Accessory Corp., Inc.*, No. 2:09-cv-2556, 2010 WL 919616, at *2 (D.N.J. Mar. 10, 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Under New Jersey law, a party must prove the existence of a contract by showing that: "(1) there was a meeting of the minds; (2) there was an offer and acceptance; (3) there was consideration; and, (4) there was certainty in the terms of the agreement." *See id.* at *3 (citation omitted).

Plaintiffs argue that there was no meeting of the minds or, alternatively, there is a genuine issue of material fact as to whether there was a meeting of the minds. *See* Pls.'

Opp'n at 3–4.  Specifically, Plaintiffs assert that: (1) Defendants did not "inform Plaintiffs of the consequence of the forfeiture of rights to a jury trial and of any ability to opt out of arbitration;" (2) "there was no bargained for exchange or consideration;" and (3) the Agreement's terms as expressed in the documents distributed by Defendants were contradictory and deceptive.  *See id*. at 5.

Allen certifies that Defendants never advised her about the waiver of a jury trial or the option to opt-out of arbitration.  *See* Certification of Shanesha Allen ("Allen Cert.") ¶ 3, ECF No. 22-4.  She also submits that she never would have agreed to arbitration had she been made aware of the jury trial waiver.  *See id*. at ¶ 6.  Critically, Allen admits to receiving "several documents related to the SIS Program," but maintains that they were "unclear, misleading, and failed to explain what Arbitration was and that [she] could lose [her] right to be heard by a jury."  *See id*. at ¶ 4.  Allen-White did not make a similar certification in support of her opposition.

"In the interpretation of an agreement to arbitrate, the duty to arbitrate rests solely on the parties' intentions as set forth in the writing."  *Martindale v. Sandvik*, 173 N.J. 76, 92 (2002).  Under this standard, the Court finds that there is no genuine dispute as to material fact concerning whether a "meeting of the minds" existed at the time of both Plaintiffs' employment.  It is an indisputable fact that Plaintiffs received the aforementioned documents concerning the SIS Program.  *See* Melody Decl. at ¶¶ 7, 19–20, 24–25, Ex. E; Allen Cert. at ¶ 4.  The Court disagrees with Plaintiffs' characterization of the documents as confusing and deceiving.  To the contrary, Defendants' documents plainly state the terms of the SIS Program, including the arbitration component and its significance, in multiple places.

The Plan Document clearly explains what arbitration is, the types of claims it covers, its optional nature as part of the SIS Program, and the waiver of a jury trial.  Below are noteworthy examples:

- "This process [Arbitration] involves an Arbitrator.  The Arbitrator is a professional, neutral third-party selected by both you and the Company.  After a hearing, the Arbitrator renders a final decision.  The decision is binding on both the Company and you."  Melody Decl., Ex. A at 1.
- "However, Arbitration is a voluntary condition of employment.  Associates are given the option of excluding themselves from Step 4 arbitration within a prescribed time frame."  *Id*. at 5.
- "All unasserted employment-related claims as of January 1, 2007 arising under federal, state or local statutory or common law, shall be subject to arbitration."  *Id*. at 6 (continuing to list numerous examples of such claims, including claims covered by "state discrimination statutes").
- "By agreeing to arbitration, the Associate and the Company agree to resolve through arbitration all claims described in or contemplated by Article 2 above.  *This means that neither the Associate nor the Company can file a*

5

> *civil lawsuit in court against the other party relating to such claims.*" *Id*. at 7 (emphasis added).

The Plan Brochure also covers these points in plain language, as evidenced by, but not limited to, the following examples:

- "Arbitration is a lot like a court proceeding, but it's less formal, less time-consuming and less expensive. Even so, many of the same processes will take place – including presenting evidence and hearing witnesses. What's different is that an arbitrator from the American Arbitration Association (who is like a judge), makes the final decision rather than a jury." Melody Decl., Ex. B at 9.
- "When covered by Step 4 final and binding arbitration, you and the Company agree to use arbitration as the sole and exclusive means to resolving any dispute regarding your employment; *we both waive the right to civil action and jury trial.*" *Id*. at 10 (emphasis added).
- "If you decide you want to be excluded from participating in and receiving the benefits of Step 4, we need you tell us in writing by completing the form enclosed in this brochure and returning it to the Office of Solutions InSTORE at the address provided within 30 days of your hire date." *Id*.

Likewise, the Election Form, which is attached to the Brochure, is abundantly clear about the optional nature of arbitration and the process by which an employee may opt out of it—*i.e.*, by completing and mailing the form to the address provided at the bottom of the page. *See* Melody Decl., Ex. C. Furthermore, both the Brochure and the Election Form emphasize the importance of reviewing the materials and suggest that an employee seek more information if needed. *See id.*, Ex. B at 10 ("We urge you to read the Plan Document and educate yourself about the benefits and limitations of arbitration to make an informed decision that's best for you."); Ex. C ("You can also get information about the program from www.employeeconnection.net/solutionsinstore, your local human resources representative, or by calling the Office of Solutions InSTORE toll free at 866-285-6689").

There is nothing unclear or deceiving about any of Defendants' documents. If Plaintiffs did not understand any of the terms contained therein, they had every opportunity to seek clarity, but they did not. Instead, Plaintiffs accepted the terms of the Agreement by electronically signing the acknowledgement form, thereby certifying that they received the documents and were instructed to review them. *See* Melody Decl., Exs. D, E. Valid consideration was exchanged through the acceptance of and continued employment with Bloomingdale's. *See Martindale*, 173 N.J. at 88 ("[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements."). The Court finds that the Agreement constitutes a valid and enforceable contract. *See Jayasundera v. Macy's Logistics & Operations, Dep't of Human Res.*, No. 14-cv-7455, 2015 WL 4623508, at *3–4 (D.N.J. Aug. 3, 2015) (finding that the terms of the SIS Program, including the arbitration agreement, were valid and enforceable).

### B. Plaintiffs' Public Interest Argument

Plaintiffs next argue that employment discrimination claims arising under the NJLAD cannot be subject to arbitration because such agreements constitute unconscionable contracts of adhesion and defy the public interest. *See* Pls.' Opp'n at 10–11. Plaintiffs cite exclusively to the New Jersey Supreme Court case *Rodriguez v. Raymours Furniture Co., Inc.*, 225 N.J. 343 (2016), in support of their argument. Plaintiffs misread *Rodriguez* and misapply its holding to the Agreement at issue before this Court.

*Rodriguez* concerned "an employment application contain[ing] a provision requiring the applicant, if hired, to agree to bring any employment-related cause of action against the employer within six months of the challenged employment action and waive any statute of limitations to the contrary." 225 N.J. at 346. The Court recognized that the NJLAD "exists for the good of all the inhabitants in New Jersey" and that "[i]f allowed to shorten the time for filing plaintiff's LAD action, this contractual provision would curtail a claim designed to also further the public interest." *See id.* at 361. The Court held that the waiver provision was unenforceable because it impermissibly curtailed the amount of time for plaintiff to seek all available avenues of relief. *See id.* at 364. The six-month period did not provide enough time for plaintiff to seek administrative remedy through the Division of Civil Rights and then subsequently file suit in Superior Court if unsuccessful in the first instance. *See id.* The Court reasoned that "the anti-discrimination public policy to be fulfilled through LAD claims may not be contractually curtailed by a limitation on the time for such actions." *See id.* at 354–65.

The Court did not base its decision on an unconscionable contract analysis, as Plaintiffs incorrectly argue. Rather, as *dicta*, the Court recognized that the employment application was a contract of adhesion and that, under the four-factor analysis, the public policy factor would weigh against the waiver provision, rendering it unenforceable. *See id.* at 366–67. In its analysis, however, the Court distinguished the waiver provision from another employment application that it previously found to be enforceable. *See id.* at 367. The Court noted: "Moreover, the employment application at issue in *Martindale* did not restrict the rights of employees to bring claims; it merely utilized an arbitration clause to agree in which forum to bring them." *See id.*

In *Martindale v. Sandvik, Inc.*, the Court upheld an employment application that contained an arbitration agreement similar to the one presently at issue. The Court found that the application "was not offered on a take-it-or-leave-it basis" and that "[n]othing in the record indicates that plaintiff asked to alter any terms of the application or that [defendant] would have refused to consider her for the position if she did not assent to the arbitration provision as presented." *See Martindale*, 173 N.J. at 91. The Court, therefore, was "not persuaded that plaintiff was forced to sign an inflexible contract of adhesion . . . ." *See id.* Having found that the parties agreed to arbitrate, the Court further concluded that NJLAD claims were not precluded from arbitration, noting "there is no indication in the text or legislative histories of . . . the LAD that restrict the use of an arbitral forum to

7

pursue those claims." *See id*. at 93. "Indeed, in respect of the LAD, a judicial remedy was never perceived to be essential to vindicate such claims." *Id*. (acknowledging the administrative hearing proceeding provided by the NJLAD and underscoring that "a jury trial is not applicable in the administrative setting").

Here, the Court finds that *Martindale* is the applicable precedent concerning the instant Agreement, not *Rodriguez*. There is nothing adhesive about the Agreement. In fact, the documents expressly provide in multiple places that the decision to arbitrate is optional and will not negatively affect a person's employment status with Defendants. *See, e.g.*, Melody Decl., Ex. A at 5 ("Whether you choose to remain covered by arbitration or to exclude yourself has no negative effect on your employment."); Ex. D at 2 ("My decision is kept confidential and will not affect my job."). As was the case in *Martindale*, the wording of the Agreement "provided plaintiff with sufficient notice at the time she signed [it] that all claims relating to employment with and termination from [Defendants] would be resolved through arbitration. It also addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the [Agreement] that claims involving jury trials would be resolved instead through arbitration." *See Martindale*, 173 N.J. at 96. Consequently, "[c]ompelling arbitration under these circumstances is fair and equitable." *Id*. Accordingly, the Court finds the Agreement to be enforceable. Defendants motion to compel is granted and the Complaint is dismissed without prejudice. *See id*. at 83, 97 (affirming the judgment of the Appellate Division, including the affirmation of the trial court's decision to dismiss the complaint without prejudice after finding an enforceable arbitration agreement). Plaintiffs cross-motion to amend is denied as moot. *See Mills v. Marjam Supply Co., Inc.*, No. 08-cv-5726, 2009 WL 235593, at *2 (D.N.J. Jan. 30, 2009) ("Here, justice does not require allowing Plaintiff to amend the Complaint because any possible claim Plaintiff could plead would be subject to arbitration [rendering] the Amended Complaint futile.").

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration is **GRANTED**, Plaintiffs' cross-motion is **DENIED**, and the Complaint is **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 20, 2016**